**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| SHUFFLE MASTER, INC., | ) | |
| Plaintiff, | ) ) ) | 2:09-cv-00937-RCJ-GWF |
| vs. | ) ) | |
| SMART SHOES, INC. et al., | ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This lawsuit arises out of the circuitous transfer of the rights to certain patents. Pending before the Court are Plaintiff's Motion to Remand (#15) and Plaintiff's Motion to Dismiss (#16). For the reasons given herein, the Court grants Plaintiff's Motion to Remand (#15) and denies Plaintiff's Motion to Dismiss (#16) as moot.

I.      **FACTS AND PROCEDURAL HISTORY**

Defendant Smart Shoes, Inc. ("Smart Shoes") sold United States Patent Nos. 6,582,310; 6,039,650; 6,299,536; 5,772,893; D432,589 and United States Patent Application No. 10/439,789 (collectively, "the Patents") to third party Progressive Gaming International Corp. ("PGIC"), formerly known as Mikohn Gaming Co., in or about 2004. Smart Shoes claims it retained a security interest in the Patents that it perfected by filing with the U.S. Patent and Trademark Office. Plaintiff Shuffle Master, Inc. ("Shuffle Master") subsequently acquired the Patents between December 2008 and March 2009 via assignment from third party International Gaming Technology ("IGT"), who

1  had acquired the Patents at a UCC Article 9 foreclosure sale held by PGIC just prior to filing for

2  Chapter 7 bankruptcy.  When PGIC filed for bankruptcy protection in March 2009, Smart Shoes

3  claimed PGIC had not paid the full purchase price for the Patents, and that Plaintiff Shuffle Master

4  was either liable for the balance as current owner of the Patents, or that Smart Shoes's rights to the

5  Patents were superior to Shuffle Master's because of its perfected security interest in them.  Shuffle

6  Master claims it owns the Patents free and clear because it was a bona fide purchaser for value.

7       Plaintiff filed the present Complaint for declaratory judgment in the Clark County District

8  Court on April 22, 2009 to determine the rights and obligations of the parties. (#1 at 15).  Defendants

9  removed the case to this Court based on federal question jurisdiction. (#1).  Defendants have also

10  filed an adversary proceeding in the Bankruptcy Court concerning the Patents.  Plaintiff has filed

11  the present Motion to Remand (#15) and a Motion to Dismiss (#16) Defendants' counterclaims for

12  rescission, constructive trust, and declaratory judgment.

13  **II.   LEGAL STANDARDS**

14  **A.   Federal Question Jurisdiction**

15       District courts have "original jurisdiction of all civil actions arising under the Constitution,

16  laws, or treaties of the Unites States." 28 U.S.C. § 1331.  A civil action "arises under" federal law

17  when it is based on a cause of action created by federal law or when a state-law claim implicates

18  significant federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308,

19  312 (2005).  This includes "claims recognized under state law that nonetheless turn on substantial

20  questions of federal law . . . ." *Id.*  "[T]he question is, does a state-law claim necessarily raise a

21  stated federal issue, actually disputed and substantial, which a federal forum may entertain without

22  disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*

23  at 314.

24       The federal question must appear on the face of the Plaintiff's well-pleaded complaint. *See*

25  *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831–35 (2002).  In the patent

law context, this means that the complaint "establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 801 (1988). A defendant cannot create federal question jurisdiction purely by virtue of his answer or petition for removal, even if the complaint itself alludes to a potential federal defense. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citations omitted). "Thus the rule enables the plaintiff, as 'master of the complaint,' to 'choose to have the cause heard in state court' 'by eschewing claims based on federal law.'" *Id.* at 838–39 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1987)).

"If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). A defendant bears the burden of establishing by a preponderance of the evidence that removal was proper, i.e., that subject matter jurisdiction exists. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996). Any doubt about removability is resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

**B.    Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally

cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

1  **III.    ANALYSIS**

2  **A.    Plaintiff's Motion to Remand**

3        Plaintiff claims it is a bona fide purchaser of the Patents and is not liable to Defendants on

4  any debt related to the Patents.  Plaintiff's Complaint asked the state court to declare the rights and

5  responsibilities of the parties.  Defendant claims that there is federal question jurisdiction in this case

6  because of patent and bankruptcy issues.

7        Defendants argue that there is federal question jurisdiction under federal patent law because

8  the Court "must address substantive patent law" in order to determine rights in the patents, including

9  the bona fide purchaser rule set forth in § 261 of the Patent Act.  Defendants argue that the Court

10  should construct a corresponding federal hypothetical complaint by Defendants against Plaintiffs,

11  and if such a complaint could have been brought under federal patent laws, there is federal question

12  jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1578 (Fed. Cir. 1993).  Defendants

13  argue that their hypothetical complaint concerns priority of rights in a patent under 35 U.S.C. § 261

14  and patent infringement under § 271.

15        Plaintiff argues that the Complaint concerns only simple matters of state commercial and

16  contract law, noting that the relief sought is a declaration of the construction of the assignment and

17  UCC foreclosure purchase of the Patents from IGT to Plaintiff, and that "[c]onstruction of patent

18  assignment agreements is a matter of state contract law." *Euclid Chem. Co. v. Vector Corrosion

19  Techs., Inc.*, 561 F.3d 1340, 1343 (Fed. Cir. 2009).  Plaintiff also notes that the "question of who

20  owns patent rights, and on what terms, typically is a question exclusively for state courts and not one

21  arising under United States patent laws." *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d

22  1324, 1329 (Fed. Cir. 2001).

23  **1.    § 261 of the Patent Act**

24        The Complaint requires a court to do more than simply construe an assignment agreement.

25  It must examine the UCC in more depth to determine the rights and obligations of the parties.  But

1    this does not mean a court must interpret § 261 of the Patent Act to decide this case.  That section

2    states that "An assignment, grant or conveyance shall be void as against any subsequent purchaser

3    or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and

4    Trademark Office within three months from its date or prior to the date of such subsequent purchase

5    or mortgage." 35 U.S.C. § 261.  This is analogous to a state recording act for real property.  It

6    establishes a federal recording act for patent ownership—a "notice" act with a three-month safe-

7    harbor period.  A notice act shields a subsequent purchaser from earlier purchasers' claims when the

8    subsequent purchaser gives value and has no actual or constructive notice of the earlier purchase.

9         Here, Defendants' hypothetical complaint would be that Plaintiff had constructive notice of

10   Defendants' rights in the Patents (the security interest in the Patents given to Defendants by PGIC,

11   which Defendants claim they recorded), and that Plaintiff therefore cannot rely on its status as a

12   bona fide purchaser as against Defendants' interest in the Patents.

13        At first glance, it might appear that this case therefore requires interpretation of § 261 of the

14   Patent Act.  The request for determination of rights in the Patents appears to implicate § 261, the

15   interpretation and application of which could be dispositive to the case.  The issue is disputed.

16   Plaintiff claims it was a bona fide purchaser.  Defendant claims Plaintiff had constructive notice of

17   its rights in the Patents via its recordation of its security interest with the Patent Office.  There is no

18   indication that Congress intended the states to apply this statute without federal interference.

19   Finally, as Defendants point out, "[t]here is quite plainly a need for a uniform body of federal law

20   on the bona fide purchaser defense." *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d

21   1323, 1327 (Fed. Cir. 2002).

22        However, Defendants fail to note an important passage in that case:  "That statute [35 U.S.C.

23   § 261] is by its terms limited to situations in which the patent owner makes inconsistent assignments,

24   grants, or conveyances to two entities, and the question is whether the later assignee should prevail."

25   *Id. Rhone-Poulenc* involved the question of whether a sublicensee acquiring its sublicense from a

1    licensee that acquired its license by fraud could retain the sublicense by showing that the sublicensee

2    was a bona fide purchaser for value under § 261. *Id.* at 1324.  The court held that § 261 did not apply

3    to a fact pattern where "the question is whether a grantee may retain its interest even if the grantor's

4    interest is voided." *Id.*  The present case resembles this fact pattern.  It does not involve inconsistent

5    transfers by a patent owner to both Plaintiff and Defendant.  The question here is the effect on

6    Plaintiff grantee's interest in the Patent by the potential voiding of the interest of one of his

7    predecessors through invocation of Defendant Smart Shoes's security interest.  Therefore, § 261

8    does not create a federal question in this case.  Priority of rights to a patent based on Article 9

9    principles can be determined in a state court without implicating § 261.

10   **2.      § 271 of the Patent Act**

11          Defendants also claim that this case will require the interpretation and application of the

12   patent infringement statute, 35 U.S.C. § 271.  The *Rhone-Poulenc* court addressed the issue, noting

13   that "In general, the Supreme Court and this court have turned to state law to determine whether

14   there is a contractual "authority" to practice the invention of a patent.  Thus, the interpretation of

15   contracts for rights under patents is generally governed by state law." 284 F.3d at 1327 (citations

16   omitted).  However, the court then held that the "bona fide purchaser defense to patent infringement

17   is a matter of federal law." *Id.* at 1328.  If the court had held otherwise, the application of various

18   bona fide purchaser defenses in the states would lead to a lack of uniformity in patent rights from

19   state to state. *Id.*  Determining the rights of the parties will therefore require an interpretation of

20   federal law—not § 261, which does not apply in this case, but the federal common law bona fide

21   purchaser defense to a claim of infringement under § 271—if there is a potential § 271 case.

22          The bona fide purchaser defense here is not Defendant's potential defense anticipated from

23   the Complaint, but rather Plaintiff's own defense, clearly implicated by the Complaint.  The bare

24   fact that it is a defense is not the issue.  The Ninth Circuit has addressed this:

25

The use of the declaratory judgment statute does not confer jurisdiction by itself if jurisdiction would not exist on the face of a well-pleaded complaint brought without the use of 28 U.S.C. § 2201. A declaratory judgment plaintiff may not assert a federal question in his complaint if, but for the declaratory judgment procedure, that question would arise only as a federal defense to a state law claim brought by the declaratory judgment defendant in state court.

If, however, the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights, then we have jurisdiction notwithstanding the declaratory judgment plaintiff's assertion of a federal defense.

*Janakes v. U.S. Postal Service*, 768 F.2d 1091, 1093 (9th Cir. 1985) (citations omitted). This is the case so long as the potential coercive action arises under federal law. *Id.* This is consistent with the Federal Circuit's "hypothetical complaint" reasoning in *Cedars-Sinai*. 11 F.3d at 1578. Although this is a removal case, it is still a declaratory judgment action, and the same reasoning applies. In the declaratory judgment context, a plaintiff often raises or implicates his own defenses in a complaint, because declaratory judgment actions are often filed by potential defendants desiring a determination of rights without having to wait to be sued. In this context, it is not the bare distinction between claim and defense in a well-pleaded complaint that is critical to federal question jurisdiction, but rather the distinction between a plaintiff's claims and defenses and a defendant's. A plaintiff pleading "I think defendant is going to plead a federal defense to my state law claim" does not invoke federal jurisdiction—the classic example. Under *Janakes*, in the declaratory judgment context, a plaintiff pleading "I have a federal defense to a state cause of action on which defendant might sue me" does not invoke federal jurisdiction either, but a declaratory judgment plaintiff pleading "I have a federal defense to a federal cause of action on which defendant might sue me" does invoke federal jurisdiction.

Here, if Defendants could have brought a § 271 infringement action against Plaintiff, there would be federal question jurisdiction based on Plaintiff's assertion of a federal defense against such a potential action. Plaintiff's argument that he does not claim a federal defense but a state law defense is irrelevant. It is a question of law for the Court whether a defense is federal, and the

1    defense to a potential § 271 infringement claim implicated by Plaintiff's "bona fide purchaser"

2    argument is clearly a federal defense. *Rhone-Poulenc*, 284 F.3d at 1328.

3            Of course, the ability to make a claim of patent infringement under § 271 requires a plaintiff

4    to own the allegedly infringed patents, and the question of ownership of the Patents is an antecedent

5    question to infringement that could be totally disposed of in the Nevada courts under Nevada UCC

6    and contract law.  As Defendants note, "[Plaintiff's] declaratory relief claim is premised on

7    [Plaintiff] being the rightful owner of the Patents in the first place . . . ." (#20 at 10:3–4).

8    Defendants' hypothetical patent infringement claim under § 271 does not implicate invalidity,

9    obviousness, or any other inherently federal issue of patent law, but rather the simple ownership of

10   the Patents—a question that can be, and ought to be, resolved under state law. *Int'l Nutrition Co.*,

11   257 F.3d at 1329.  Therefore, because the plausibility of a hypothetical infringement complaint

12   would be dispositively dependent on an antecedent determination of ownership rights in the Patents

13   under state law, it does not create federal question jurisdiction in the present action.

14   **3.      The Bankruptcy Code**

15           Next, Defendants argue that the Complaint "raises substantial questions of bankruptcy law."

16   (#20 at 10:1–2).  Defendants argue that because PGIC filed for bankruptcy protection within ninety

17   days of the foreclosure sale of the Patents (which Plaintiffs now own by assignment from the buyer,

18   IGT), that the foreclosure sale might be void under § 547 of the Bankruptcy Code.

19           The provision of the Bankruptcy Code at issue gives a bankruptcy trustee broad powers to

20   invalidate transfers of a debtor's property made before filing for bankruptcy. *See* 11 U.S.C. § 547.

21   Foreclosure sales are "transfers" under § 547. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543 n.7

22   (1994).  Here, IGT was the buyer of the foreclosed Patents.  The creditor who initiated the January

23   2009 foreclosure sale of the Patents was an entity called Private Equity Management Group

24   Financial Corp. ("PEM").  PEM foreclosed based on a security interest in the Patents that PGIC had

25   granted PEM in August 2008.  Defendants' argue that this transfer may be void under § 547(b) of

1    the Bankruptcy Code, and if this is true, then IGT's interest in the patents is voidable, and hence

2    Plaintiff has no interest in the patents because IGT had no rights in them to assign.

3           Plaintiff replies that the argument for federal question jurisdiction based on the Bankruptcy

4    Code is a "red herring" (#23 at 9:21) and that PGIC's bankruptcy has nothing to do with the rights

5    to the Patents as between Shuffle Master and Smart Shoes, or whether Shuffle Master is liable for

6    PGIC's allegedly unpaid debt to Smart Shoes. Plaintiff argues that the case is not a core bankruptcy

7    case because the action does not depend on bankruptcy laws for its existence, *see Sec. Farms v. Int'l*

8    *Board of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997), and it is not a "related" non-core case

9    giving rise to federal jurisdiction because the outcome of the proceeding "could [not] conceivably

10   have any effect on the estate being administered in bankruptcy." *See In re Feitz*, 852 F.2d 455, 457

11   (9th Cir. 1988). Plaintiff notes that it does not want to be baited into arguing the substantive law of

12   bankruptcy, but that there was no preferential transfer here because PEM did not receive more from

13   the foreclosure sale than it would have received in Chapter 7 liquidation.

14          Plaintiff is correct that none of PGIC's current property is directly implicated in this case,

15   but the amounts due PGIC's creditors in liquidation would be affected by the avoidance of the

16   foreclosure sale of the Patents. PEM, who foreclosed on the Patents, will as it stands recover more

17   than it would have if the transfer had not been made. The transfer of the Patents from PGIC to IGT

18   is therefore potentially voidable by the trustee. *See* § 547(b)(5). If this transfer is avoided, and the

19   Patents are brought back into the estate for liquidation, this will affect the amount Smart Shoes can

20   recover from the liquidation of PGIC, and it will also strip Shuffle Master of its rights in the Patents.

21   Shuffle Master would undoubtedly raise a bona fide purchaser defense, but this would be the federal

22   common law bona fide purchaser defense. Construing this defense with the trustee's own "bona fide

23   purchaser powers" under § 544 would require a complex interpretation of federal law.

24          Of course, these determinations will not be made in this Court, except perhaps on

25   independent appeal from the Bankruptcy Court. None of the bankruptcy issues implicated here are

1    potentially before this Court in its trial court capacity.  The fact that the parties' rights to the patents

2    may be affected in a separate bankruptcy proceeding does not implicate a significant question of

3    federal law before this Court.  Therefore, the bankruptcy issues implicated by the facts of this case

4    do not confer federal question jurisdiction on the Court to decide the rights of the parties as to

5    Article 9 transfers and contractual debt obligations.

6          There being no significant questions of federal law under the Patent Act or the Bankruptcy

7    Code, the Court grants the Motion to Remand (#15).

8    **B.    Plaintiff's Motion to Dismiss Defendants' Counterclaims**

9          Because the Court grants the Motion to Remand (#15), Plaintiff's Motion to Dismiss (#16)

10   is moot, as the Court does not have jurisdiction to rule on it.  The Court will discuss its opinion on

11   the issues, however, for the record.

12   **1.    Rescission and Imposition of a Constructive Trust**

13         Defendants ask for rescission of the assignment agreements between IGT and Plaintiff and

14   imposition of a constructive trust in their favor due to wrongful conduct of Plaintiff and/or IGT.

15   Plaintiff responds that rescission is not allowed where the person requesting the remedy is not a

16   party to the contract for which rescission is requested, *see Wolf v. Bonanza Inv. Co.*, 360 P.2d 360,

17   361 (Nev. 1961), and that Defendants have not alleged to have been a party to the assignment

18   contracts.  This is correct.

19         Next, Plaintiff argues that Defendants have not pled the elements of a constructive trust

20   remedy: (1) a confidential relationship between the parties; (2) inequitable retention of legal title by

21   the holder; and (3) essentiality of a constructive trust to the administration of justice. *Waldman v.*

22   *Maini*, 195 P.3d 850, 857 (Nev. 2008).  The lack of a confidential relationship between the parties

23   is the most glaring problem with this counterclaim.  Defendants claim that Plaintiff's "assumption

24   of the obligations to [Defendants] that encumber the Patents" are sufficient to create a confidential

25   relationship between the parties.  But assumption of contractual obligations, even assuming this to

1  be the case here, does not create a confidential relationship.  Defendants cite cases mainly

2  concerning assumption of contractual duties, but the only case they cite concerning confidential

3  relationships is *Randono v. Turk*, 466 P.2d 218 (Nev. 1970).  The quotation from that case that

4  Defendants reproduce is ultimately from *Hedrick v. Hedrick*, 168 S.W.2d 69 (Mo. 1943).  In any

5  case, in *Randono*, "[t]he parties became good friends socially and developed a close relationship."

6  466 P.2d at 220.  Defendants plead no such relationship here or even that the parties in this case ever

7  directly dealt with one another.  The First Counterclaim should therefore be dismissed if the Court

8  were to have jurisdiction over the matter.

9  **2.  Declaratory Relief**

10        Defendant has asked the Court in its Second through Fifth Counterclaims to declare its rights

11  to the patents based on "federal patent law" (Second Counterclaim), "federal patent law" and 35

12  U.S.C. § 261 (Third and Fourth Counterclaims), and the Nevada Uniform Commercial Code

13  ("UCC") (Fifth Counterclaim).  As noted above, § 261 does not apply to fact patterns such as the

14  present one, so the Third and Fourth Counterclaims should be dismissed if the Court were to have

15  jurisdiction over the matter.

16  **a.  Federal Patent Laws**

17        The Second Counterclaim requests declaratory relief that the assignment agreements between

18  Smart Shoes and PGIC did not totally transfer the rights to the Patents, but reserved certain rights

19  to Smart Shoes, including the right to rescind and to sue for past infringement, and that these rights

20  are superior to those of any subsequent transferee, such as Shuffle Master.  Plaintiff argues that

21  Defendants ask for a declaration of rights under the federal patent laws but that their rights, if any,

22  arise from state contract law.  This is correct.  These counterclaims asking for a determination of

23  rights "under federal law" are largely supplemental arguments that federal question jurisdiction

24  exists in the first place.  Therefore the Court should deny the Motion to Dismiss (#16) as to the

25

1   Second Counterclaim if it were to have jurisdiction over the matter, because a ruling based on

2   federal law would be appropriate as to any federal question the Court found to be at issue.

3   **b.**      **Nevada UCC**

4          The Fifth Counterclaim requests the same declaratory relief, but under the Nevada UCC.

5   Defendant simply requests that the court declare that it has certain rights in the Patents, whether or

6   not the Court determines that federal or state law controls any particular issue.  If the Court

7   determines that there is federal question jurisdiction, many of the issues may still be determined

8   under Nevada law.  Therefore, the Court should deny the Motion to Dismiss (#16) as to the Fifth

9   Counterclaim, if it were to have jurisdiction over the matter, because rulings based on Nevada law

10  would still be available.

11                                          **CONCLUSION**

12         IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (#15) is GRANTED, and

13  Plaintiff's Motion to Dismiss (#16) is DENIED as moot.

14         DATED:        October 14, 2009

15

16         _____

17         Robert C. Jones
           United States District Judge

18

19

20

21

22

23

24

25